942 So.2d 1093 (2006)
Wilfred MITCHELL
v.
KAISER ALUMINUM & CHEMICAL CORPORATION.
No. 06-CA-226.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2006.
Robert M. Becnel, Diane K. Zink, LaPlace, Louisiana, for Plaintiff/Appellee.
Stephen C. Resor, Michael M. Meunier, Jonathan Rosenberg, Sullivan, Stolier & Resor, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
Defendant, Kaiser Aluminum & Chemical Corporation, appeals a judgment against it finding that Kaiser failed to pay a workers' compensation lump sum settlement to plaintiff, Wilfred Mitchell, within the time period prescribed in LSA-R.S. 23:1201(G). The judgment awarded statutory penalties and attorney's fees against Kaiser.
On appeal, Kaiser argues that the delay in paying the settlement was directly a result of the disruptions caused by Hurricanes Katrina and Rita, and thus, was beyond Kaiser's control. Further, Kaiser argues that the statutory time period to pay the settlement was suspended by Governor Blanco's Executive Order KBB 2005-32 and as extended by KBB 2005-48, and they should not be cast with penalties and attorney's fees.
In oral reasons given in open court, the trial court found that the fault in the delayed payment lay, not with Kaiser or *1094 defense counsel, but with the "people handling the payment schedule," who were not located in Louisiana and were not adversely affected by the hurricanes.
Plaintiff argues on appeal that Broadspire, Kaiser's insurer and adjustor, is located in Illinois, and thus, was not affected or disrupted by the hurricanes, and thus, the delay in the settlement's payment was not out of Kaiser's control. Alternatively, they argue that the Executive Order does not apply to Broadspire, since it is not located in the affected parishes of Louisiana. And they further argue that the Executive Order was not designed to protect entities like Broadspire from "passing bad checks."
The facts show that Mitchell and Kaiser entered into a settlement of his workers' compensation claim on August 22, 2005 for $20,000.00. As related by defendant's brief and attachments thereto, on August 25, 2005, Kaiser's adjustor at Broadspire Claim Service, Daniel Lemon, mailed the settlement check to Mr. Resor, counsel for Kaiser, to Resor's New Orleans office.[1]
On August 29, 2005, Hurricane Katrina hit the New Orleans area, causing Mr. Resor's office to evacuate and relocate to Lafayette, Louisiana, and further causing well-known destruction and disruptions in all basic services, including the mail. Further, on September 24, Hurricane Rita hit southwest Louisiana, causing additional business and mail disruptions, which affected Mr. Resor's temporary office in Lafayette.
Kaiser's brief relates that in the first week of October, Mr. Resor telephoned Mr. Lemon to request a second settlement check for Mr. Mitchell, because Mr. Resor never received the first check in the mail. According to his affidavit, on October 6, 2005, Mr. Lemon sent a second check to Mr. Resor's Lafayette office via the U.S. Mail. He also put a stop-payment order on the first check, according to his affidavit. His affidavit, however, does not state whether he told Mr. Resor of the stop payment. Mr. Resor denied knowing that a stop payment order had been placed on that first check. Coincidentally, also on October 6, Mr. Resor finally received the first settlement check in a batch of mail forwarded from his New Orleans office. He forwarded that first check to Mr. Becnel, counsel for Mr. Mitchell.
Mr. Becnel received the check and deposited it into his office trust account, and on October 13th, Mr. Mitchell signed the settlement and release agreement. Mr. Becnel's bank advised him that the check could not be negotiated due to the stop payment order. Mr. Resor's brief states that Mr. Becnel called him on October 24th to advise him that the check had been returned. Meanwhile, the second check, mailed on October 6 to Mr. Resor's Lafayette office, never arrived and has never been located.
On November 14, 2005, counsel for Mitchell filed a Motion and Order to Enforce Lump Sum Settlement Agreement and Assess Penalties and Attorney Fees Pursuant to LA. R.S. 23:1201(G). On November 16, 2005, Mr. Lemon's affidavit states that he sent a third settlement check directly to Mr. Mitchell via Federal Express overnight mail, which, according to the tracking information, Mr. Mitchell received on November 17, 2005.
After receiving opposition from Kaiser, the motion was argued on December 12, 2005, and a written judgment was rendered in favor of Mitchell on December 19, 2005. Kaiser filed a Motion for Reconsideration, *1095 which was denied. Thereafter, Kaiser perfected this appeal.
LSA-R.S. 23:1201(G) states:
G. If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.
Kaiser's counsel argues that the settlement payment was delayed because of disruptions to his office and to the U.S. Mail caused by Hurricanes Katrina and Rita. He argues that Executive Orders KBB-2005-32 and KBB-2005-48 apply specifically to this case. KBB-2005-32 and 48[2] are reproduced as follows:

EXECUTIVE ORDER NO. KBB 2005-32
EMERGENCY SUSPENSION OF PRESCRIPTION, PEREMPTION AND OTHER LEGAL DEADLINES
"WHEREAS, the Louisiana Homeland Security and Emergency Assistance and Disaster Act, R.S. 29:721, et seq., confers upon the governor of the state of Louisiana emergency powers to deal with emergencies and disasters, including those caused by fire, flood, earthquake or other nature or man-made causes;
"WHEREAS, Hurricane Katrina struck the state of Louisiana causing severe flooding and damage to the southeastern part of the state, which has threatened the safety and security of the citizens in the affected areas, along with private property and public facilities;
"WHEREAS, pursuant to Proclamation No. 48 KBB 2005, a state of emergency was declared for the entire state and is currently in effect;
"WHEREAS, as a direct consequence of the disaster and evacuation, attorneys throughout the state have clients whom they cannot contact due to the client's evacuation outside of their home parishes and in many cases, outside the state of Louisiana;
"WHEREAS, similarly, there are clients who can not contact their counsel due to counsel's evacuation as well as the extreme challenges to communication networks resulting from the hurricane and subsequent flooding;
"WHEREAS, in addition, attorneys from areas affected by Hurricane Katrina have clients and cases in parishes not directly affected by this extreme disaster, but because the attorney's office is either destroyed or not accessible, the attorney is not reasonably able to timely file claims or responses on behalf of their clients;
"WHEREAS, La. Constitution Art. I, Section 22 provides that all courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable *1096 delay, for injury to him in his person, property, reputation, or other rights;
"WHEREAS, Hurricane Katrina has also rendered several of the court houses temporarily inoperable and/or not fit for occupancy;
"WHEREAS, the destruction and disruption of services and infrastructure to our system of justice caused by Hurricane Katrina will have a profound impact on the basic rights to an untold number of persons unless action is taken to suspend the effects of the tolling of legal delays during the period of this emergency; and
"WHEREAS, the Louisiana State Bar Association, the Louisiana Trial Lawyers Association, and the Louisiana Association of Defense Counsel jointly requested the governor to suspend all deadlines applicable to legal proceedings, including prescription and peremption, in all Louisiana state courts, administrative agencies and boards;
"NOW THEREFORE I, KATHLEEN BABINEAUX BLANCO, Governor of the state of Louisiana, by virtue of the authority vested by the Constitution and laws of the state of Louisiana, do hereby order and direct as follows:
"SECTION 1: All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following:

"A. Louisiana Civil Code;
"B. Louisiana Code of Civil Procedure;
"C. La. R.S. Title 9, Civil Code Ancillaries;
"D. La. R.S. Title 13, Courts and Judicial Procedure;
"E. La. R.S. Title 23, Chapter 10, Worker's Compensation;

"F. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and
"G. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice.
"SECTION 2: This Order is effective upon signature and shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time.
"IN WITNESS WHEREOF, I have set my hand officially and caused to be affixed the Great Seal of Louisiana, at the Capitol, in the city of Baton Rouge, on the 6th day of September, 2005.
"/S/Kathleen Babineaux Blanco
"GOVERNOR OF LOUISIANA
"ATTEST BY
"THE GOVERNOR
"/S/Al Ater
"SECRETARY OF STATE"
(Emphasis added.)

EXECUTIVE ORDER NO. KBB 2005-48

EXTENSION OF EXECUTIVE ORDER NO. KBB 2005-32
EMERGENCY SUSPENSION OF PRESCRIPTION, PEREMPTION AND OTHER LEGAL DEADLINES
"WHEREAS, Executive Order No. KBB 2005-32, issued on September 6, 2005, suspended all deadlines applicable to legal proceedings, including prescription and peremption, in all Louisiana state courts, administrative agencies and boards;

*1097 "WHEREAS, Executive Order No. KBB 2005-32 is in effect until September 25, 2005; and
"WHEREAS, the Louisiana State Bar Association, the Louisiana Trial Lawyers Association, and the Louisiana Association of Defense Counsel jointly requested that Executive Order No.2005  32 be extended for an additional thirty (30) days;
"NOW THEREFORE I, KATHLEEN BABINEAUX BLANCO, Governor of the state of Louisiana, by virtue of the authority vested by the Constitution and laws of the state of Louisiana, do hereby order and direct as follows:
"SECTION 1: Section 1 of Executive Order No. KBB 2005-32, issued on September 6, 2005, is amended as follows:
"A. All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least October 25, 2005, including, but not limited to, non-constitutionally mandated deadlines in criminal proceedings and any such deadlines set for in the following:

"1. Louisiana Civil Code;
"2. Louisiana Code of Civil Procedure;
"3. R.S. Title 9, Civil Code Ancillaries;
"4. La. R.S. Title 13, Courts and Judicial Procedure;
"5. La. R.S. Title 23, Chapter 10, Workers Compensation;

"6. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and
"7. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice.
"B. The suspension of laws as provided in Subsection 1(A) of this Executive Order shall apply statewide and in all matters, except to the extent that the suspension of deadlines in legal proceedings may hereafter be shortened or lifted, in whole or in part, by an order issued by the Louisiana Supreme Court acting in accordance with the power vested pursuant to Article V of the Constitution.

"SECTION 2: This Order is effective upon signature and shall remain in effect until Tuesday, October 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time.
"IN WITNESS WHEREOF, I have set my hand officially and caused to be affixed the Great Seal of Louisiana, at the Capitol, in the city of Baton Rouge, on this 23rd day of September, 2005.
"/S/Kathleen Babineaux Blanco
"GOVERNOR OF LOUISIANA
"ATTEST BY
"THE GOVERNOR
(Emphasis added.)
Counsel for Kaiser, Mr. Resor, stated in his pleadings and at the hearing on this matter that prior to Hurricane Katrina, his office was located in downtown New Orleans, and that as a direct result of the effects of Katrina, he was forced to evacuate both his home and office, which was relocated to Lafayette, Louisiana. He further stated that he was prevented from visiting his New Orleans office for approximately eight weeks. Further, he noted that mail service in south Louisiana was severely disrupted by the hurricanes, a fact noted in the Governor's three Executive Orders. The severe impact of the hurricanes on basic services and mail is well and widely known and this Court takes judicial notice of such fact.
The effect of these three Executive Orders on legal deadlines in court and administrative *1098 proceedings is one of first impression in this Court, as our research has failed to show any other cases as of this time that apply or interpret the Executive Orders.[3]
The trial court found that there was no fault on the part of Kaiser or Mr. Resor, but because Broadspire was located in Illinois, they were not adversely affected by the hurricanes and the Executive Orders did not apply to them.
The Executive Orders make clear that all legal deadlines in the listed types of proceedings, which included workers' compensation cases, were suspended until October 25, 2005.[4] The suspension of deadlines is without condition or qualification. The Executive Orders clearly apply to proceedings, not parties. The Orders make no reference to particular parties or fault of parties, or the location of other interested persons, as a condition for their applicability.
This settlement was reached on August 22, 2005. Normally, the 30 day deadline in which to pay the settlement, found in LSA-R.S. 23:1201(G), would have given Kaiser until September 21, 2005 to pay the settlement to Mitchell. The Order suspended that deadline until November 17, 2005 (on August 29, 2005, the day Katrina struck, 7 of the 30 days had already passed, leaving 23 days remaining. 23 days past October 25th is November 18, 2005). November 17th is when Mitchell received the third check. Under the time limits in LSA-R.S. 23:1201(G), as suspended by the Executive Orders, the settlement was paid timely.
The trial judge was clearly in error when he refused to recognize the suspension in this proceeding because the adjustor was located out of state and presumably not affected by the hurricanes. The Executive Orders recognize that it is the legal proceedings in this state that were disrupted by the hurricane, and thus, the suspension operates in favor of the proceedings, not the individual parties or interested persons. Therefore, it is irrelevant that Broadspire, who is not a party to this suit, was located in an area not physically affected by the hurricanes.
Since Mr. Mitchell received his check on or about November 17th, and the deadline in this case was suspended until November 18th, the settlement was not paid "late" under LSA-R.S. 23:1201(G). Therefore, the trial court clearly erred in reaching the issue of fault (whether the settlement was paid late due to "conditions over which the employer had no control," as per LSA-R.S. 23:1201(G)). Only if the settlement had been paid after the expiration of the suspended deadline would such a determination be required by LSA-R.S. 23:1201(G).
Accordingly, we find that the trial court clearly erred in its ruling. Kaiser is not liable to plaintiff for penalties and attorney fees under LSA-R.S. 23:1201(G), and reverse the judgment of the trial court.
REVERSED.
NOTES
[1] Mr. Lemon executed his affidavit in Dallas County, State of Texas.
[2] The legislature has ratified the Governor's Executive Orders in LSA-R.S. 9:5821 et seq.
[3] As of September 14, 2006, research shows only three cases that mention these executive orders: State v. All Property and Cas. Ins. Carriers, 2006-2030, 937 So.2d 313 (La.8/25/06), State v. Schnyder, 06-29, 937 So.2d 396(La.App. 5 Cir. 6/28/06), and McCorvey v. McCorvey, 05-2577 (La.3/10/06), 923 So.2d 638, but these cases fail to give this Court much guidance in this matter.
[4] On October 3, 2005, the Supreme Court issued a Resolution that set forth procedures to allow the lifting of the suspension of deadlines on a case by case basis. None of those procedures were employed in this case, so the suspension of deadlines remained in place until October 25, 2005.